IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| SANDRA R. PERRY | * |
| 1707 South Mill Drive | |
| Salisbury, Maryland 21804 | * |
| | |
|      Plaintiff | * |
| | |
| v. | * |
| | |
| STATE OF MARYLAND | * |
| 200 Saint Paul Place | |
| Baltimore, Maryland 21202 | * |

Case No.: _____

**JURY TRIAL DEMAND**

Serve On:    Brian E. Frosh, Attorney General
                Office of the Attorney General
                200 Saint Paul Place    *
                Baltimore, Maryland 21202
                                  *

Serve On:    Nancy K. Kopp, Treasurer
                State of Maryland Treasurer's Office
                Treasury Building, Room 109*
                80 Calvert Street
                Annapolis, Maryland 21401  *

v.                                    *

MARYLAND DEPARTMENT OF HEALTH
201 West Preston Street          *
Baltimore, Maryland 21201
                                  *

Serve On:    Dennis Schrader, Secretary
                Maryland Department of Health
                Office of the Secretary    *
                201 West Preston Street, 5th Floor
                Baltimore, Maryland 21201  *

and                                    *

DEER'S HEAD HOSPITAL CENTER  *
351 Deer's Head Hospital Road
Salisbury, Maryland 21802        *

1

Serve On:   Mary Beth Waide, Executive Director
            Deer's Head Hospital Center *
            351 Deer's Head Hospital Road
            Salisbury, Maryland 21802   *

and                                     *

MARY BETH WAIDE                         *
351 Deer's Head Hospital Road
Salisbury, Maryland 21802               *

and                                     *

KENNETH WALLER                          *
351 Deer's Head Hospital Road
Salisbury, Maryland 21802               *

and                                     *

ELIZABETH PERDUE                        *
3255 Phillips Road
Salisbury, Maryland 21804               *

and                                     *

ALLEN JOHN PERDUE                       *
3255 Phillips Road
Salisbury, Maryland 21804               *

and                                     *

LUANNE DASHIELD                         *
351 Deer's Head Hospital Road
Salisbury, Maryland 21802               *

    Defendants                          *

## COMPLAINT FOR DAMAGES
## UNDER TITLE VII OF THE CIVIL RIGHTS ACT

Plaintiff, Sandra R. Perry, by and through her undersigned counsel, James L. Otway,

Esquire, Amy L. Taylor, Esquire and Otway Russo, P.C. hereby files this Complaint against the

above captioned Defendants (hereinafter "Defendants") seeking redress of violations of Title VII

2

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); and

Maryland State law, and for causes of action against said Defendants states as follows:

<u>PARTIES</u>

1.      Plaintiff **SANDRA R. PERRY** (hereinafter "Ms. Perry") was at all relevant time

hereto a paid, full – time, female Agency Procurement Specialist employed by the State of

Maryland, Department of Health at Deer's Head Hospital Center, located in Salisbury,

Wicomico County, Maryland.  Ms. Perry is a citizen of the United States and an adult resident of

the State of Maryland.

2.      The **STATE OF MARYLAND** is a State of the United States.

3.      The **MARYLAND DEPARTMENT OF HEALTH**, pursuant to Maryland Code,

Health-General § 2-102 is a principal department of the State of Maryland government.

4.      **DEER'S HEAD HOSPITAL CENTER** ("DHHC") is a state-owned and

operated rehabilitation and long term care inpatient facility.

5.      **MARY BETH WAIDE** ("Ms. Waide"), at all relevant times, was the Executive

Director of DHHC.  Ms. Waide, upon information and belief, at all relevant times, was a resident

of the State of Delaware.

6.      **KENNETH WALLER** ("Mr. Waller"), at all relevant times, was the Chief

Financial Officer of DHHC.  Mr. Waller, upon information and belief, at all relevant times, was

a resident of the State of Maryland.

7.      **ELIZABETH PERDUE** ("Mrs. Perdue"), at all relevant times, was the

immediate supervisor of Plaintiff Sandra Perry.  Mrs. Perdue, upon information and belief, at all

relevant times, was a resident of the State of Maryland.

3

8.     **ALLEN JOHN PERDUE** ("Mr. Perdue"), at all relevant times, was the husband of Elizabeth Perdue.  Mr. Perdue, upon information and belief, at all relevant times, was a resident of the State of Maryland.

9.     **LUANNE DASHIELD** (Ms. Dashield"), at all relevant times, was the Human Resources/Personnel Director and/or Chief Operating Officer/Assistant Superintendent at Deer's Head Hospital Center.  Ms. Dashield, upon information and belief, at all relevant times, was a resident of the State of Maryland.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 42 U.S.C. 2000e, *et seq.*; and 28 U.S.C. 1387, *et seq.*

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district and Defendants may be found in this district.

## FACTS COMMON TO ALL COUNTS

12.     On August 30, 1995, Plaintiff Sandra R. Perry was hired by the State of Maryland and began working in contract management services.  From 2009 to 2017, Ms. Perry was employed by the State of Maryland as an Agency Procurement Specialist II at DHHC.

13.     In the position of Agency Procurement Specialist II at DHHC, Ms. Perry was responsible for, among other duties, procuring equipment, services, supplies, and other needs, which must be obtained through the competitive or negotiated procurement process.  Ms. Perry was responsible, among other duties, for soliciting, evaluating, negotiating and awarding contracts, according to State Procurement laws, procedures and regulations, as well as maintaining contracts by assuring compliance with terms and conditions.

14.     During her time as an Agency Procurement Specialist II at DHHC, Ms. Perry received "Outstanding" performance reviews from her supervisor, Mrs. Perdue.

15.     In addition, during the time that Mrs. Perdue supervised Ms. Perry, the two had a successful and professional working relationship and one that was mutually respectful.

16.     On October 1, 2015, Ms. Perry received a sexually harassing email message to her work email address.

17.     The email message came from leglover13@hotmail.com and said: "are you an exhibitionist? love those short skirts and your long legs. when you bent over your cheeks looked great. do you go commando?  my picture says so? need more personal contact. you might agree by sending me proof and if you shave.  I know you don't want this circulated."

18.     Ms. Perry did not recognize the email address and did not know who would send such a message to her.[1]  Ms. Perry felt extremely uncomfortable and threatened by the email message and reported it to her immediate supervisor, Mrs. Elizabeth Perdue, and her department director, Mr. Kenneth Waller, that same day.  Ms. Perry also contacted the Information Technology ("IT") Department at DHHC, that same day, in an attempt to seek information on the sender of the email message.

19.     Mrs. Perdue did not respond to Ms. Perry's complaint.  She remained quiet and then walked away silently.  Mr. Waller also took no action.

20.     Later that same day, Ms. Perry determined, by performing a Google search that the sexually harassing email message came from Allen John Perdue, who is the husband of Ms. Perry's immediate supervisor, Mrs. Beth Perdue.

---

[1] The email message was not filtered to her spam folder.

21.     That same day, Ms. Perry notified Mr. Waller and members of the IT staff that she believed that the sender of the email was Allen John Perdue[2], who is the husband of Ms. Perry's immediate supervisor, Mrs. Beth Perdue.

22.     Ms. Perry did not receive any response from Mr. Waller nor from any member of the IT Department.

23.     Later that day, Ms. Perry found a member of the IT staff, Mr. Phil Adkins, at her desk on her computer. After Mr. Adkins logged off of her computer, Ms. Perry saw that the obscene email message had been removed from her In Box. Ms. Perry questioned Mr. Adkins about this, and his response was that he must have accidentally moved the email message. Ms. Perry retrieved the obscene email message from her spam folder to share with the Human Resources Department.

24.     Ms. Perry reported the email message and the lack of response by Mrs. Perdue, Mr. Waller, and the IT Department, to the Human Resources Department at DHHC. Ms. Perry requested that Ms. Dashield address the matter with Mrs. Perdue and preclude Mr. Perdue from being allowed on the DHHC premises.

25.     After Ms. Dashield notified Mrs. Perdue of Ms. Perry's complaint, Mrs. Perdue initiated a pattern of hazing, harassment, hostility, and isolation directed at Ms. Perry. Mrs. Perdue gave Ms. Perry the silent treatment, and would not communicate with Ms. Perry face to face. Mrs. Perdue changed all of her interaction with Ms. Perry from face to face contact on a daily basis, along with some email communication, to only very limited email communication.

---

[2] Mr. Perdue had visited his wife, Mrs. Perdue, at work on occasion. During the course of those visits, Ms. Perry had met Mr. Perdue. Ms. Perry's interaction with Mr. Perdue at the workplace was limited to polite conversation. Mrs. Perdue had also included Ms. Perry and her husband on group emails from which Mr. Perdue may have obtained Ms. Perry's work email address.

In addition, on several occasions, Mrs. Perdue became critical of Mr. Perry's work performance with no reasonable reason for doing so.

26.     Ms. Perry complained to Mr. Waller and Ms. Dashield about Mrs. Perdue's hostility toward Ms. Perry; however, no corrective action was taken.

27.     On October 30, 2015, Ms. Perry requested that she be removed from Mrs. Perdue's supervision, given the ongoing hostile treatment by Mrs. Perdue of Ms. Perry, but this request was denied.

28.     On October 30, 2015, Ms. Perry began medical treatment as a result of stress, anxiety, and depression created by the sexual harassment and ensuing retaliation and hostile work environment.

29.     On November 24, 2015, Ms. Perry received an email message from Ms. Dashield informing Ms. Perry that she was being temporarily assigned to the clerical position of "timekeeping" until mid-March 2016, when that employee returned from medical leave, and that Ms. Perry's office had been relocated to an unoccupied area of the DHHC building, where she was the only person working.

30.     The clerical position of "timekeeping" was a lower-level, data entry position with job duties that were very different from Ms. Perry's job duties as an Agency Procurement Specialist II.

31.     Ms. Dashield told Ms. Perry that she "hoped" DHHC could find Ms. Perry "a more suitable position" in March 2016.

32.     Ms. Perry protested this "corrective action" because she felt Defendants were punishing and retaliating against her for being the victim and speaking up.

33.     On December 4, 2015, Ms. Perry received an email message from Ms. Dashield stating that Defendants were standing by their decision to reassign Ms. Perry's position with a reduction in duties and banish Ms. Perry to an unoccupied area of the DHHC building.

34.     Upon hearing this news and as a result of the ongoing hostile work environment, on December 4, 2015, Ms. Perry suffered a panic attack and presented to her primary care provider, and Ms. Perry sought the treatment of a therapist. Ms. Perry's medical providers directed her to remain out of work beginning December 6, 2015, as a result of stress, anxiety, and depression created by the sexual harassment and ensuing retaliation and hostile work environment.

35.     From December 6, 2015 through February 28, 2016, a period of approximately 12 weeks, Ms. Perry was out of work on approved medical leave, as a result of the sexual harassment and ensuing retaliation and hostile work environment.

36.     On January 8, 2016, management at DHHC was made aware that Ms. Perry would be returning to work on February 28, 2016. On February 26, 2016, Ms. Perry was made aware that she would be returning to her position under Mrs. Perdue's supervision.

37.     On February 11, 2016, Ms. Perry filed a Charge of Discrimination with EEOC, alleging sexual harassment and retaliation.

38.     On February 26, 2016, Mrs. Perdue sent an email message to all staff at DHHC entitled "New procedures for purchasing" and demanding that all purchase orders be sent to her only.

39.     On February 29, 2016, Ms. Perry was excluded and not given any instruction or work to do. Defendants did not provide Ms. Perry with access to the financial system (FMIS), Excel, Word contract files, the purchasing directory, printer, or shared Google calendar, and her

work credit card account had been closed.  Ms. Perry had had access to all of these items before taking medical leave.

40.     Upon Ms. Perry's return from medical leave, Mrs. Perdue began a practice of slamming office doors, slamming filing drawers, and slamming restroom doors whenever Ms. Perry was nearby.

41.     Upon her return to work, Ms. Perry was told by the storeroom staff supply officer that he had been training in procurement and had been using Ms. Perry's desk in her absence. Despite Ms. Perry returning to work, Mrs. Perdue and Mr. Waller continued to give tasks to the storeroom staff supply officer that were done by Ms. Perry before her medical leave.

42.     Mrs. Perdue changed the way that contract review was assigned between Ms. Perry and Mrs. Perdue.  Before October 1, 2015, Ms. Perry and Mrs. Perdue split the contract reviews evenly.  Upon Ms. Perry's return from medical leave, Mrs. Perdue completely changed the functionality of the department from shared responsibility between Mrs. Perdue and Ms. Perry (working independently) to Mrs. Perdue now assigning and approving all work (increased supervision).

43.     On May 24, 2016, the storeroom staff supply officer who he had been training in procurement reported for his last day of work.  Defendants have not returned those duties and responsibilities to Ms. Perry.

44.     On May 26, 2016, Ms. Perry discovered through Workday (the State of Maryland timekeeping system) that a 6-month performance review was initiated by Mr. Waller on Ms. Perry on January 4, 2016, while Ms. Perry was on medical leave.  Ms. Perry was given a rating of "Satisfactory."  Previously, Ms. Perry had always received an "Outstanding" rating.

45.     Defendants never met with Ms. Perry about the January 4, 2016, PEP.

9

46.     On June 23, 2016, when Ms. Perry was scheduled for her annual performance

review, Mrs. Perdue left a copy of the performance review in Ms. Perry's in box with an email

stating that if Ms. Perry wanted to discuss it, to let her know.  Like the mid-cycle PEP, Mrs.

Perdue rated Ms. Perry as "Satisfactory."  Again, prior to Ms. Perry's complaints, Ms. Perry had

always received an "Outstanding" rating.  And, again, Mrs. Perdue avoided any face to face

contact with Ms. Perry.

47.     On April 10, 2017, Ms. Perry's medical providers again put her out of work as a

result of stress, anxiety, and depression created by the sexual harassment and ensuing retaliation

and hostile work environment.

48.     Defendants approved Ms. Perry for medical leave.  Ms. Perry used approximately

six weeks of sick leave that she had remaining and then was on medical leave without pay.

49.     On or about June 27, 2017, Ms. Perry found out that Defendants first posted Mrs.

Perdue's position[3] on April 28, 2017, with an application closing date of May 19, 2017.  A

person who was less-qualified than Ms. Perry was hired sometime in June 2017 to fill Mrs.

Perdue's position at Agency Procurement Specialist Supervisor.  The position posting, position

application closing date, and hiring for the position were all completed during Ms. Perry's

medial leave.

50.     On or about July 5, 2017, Ms. Perry's scheduled day to return from medical leave,

Ms. Perry informed her employer that she was not medically cleared to return to work as a result

of stress, anxiety, and depression created by the sexual harassment and ensuing retaliation and

hostile work environment.

---

[3] Mrs. Perdue had made it well-known around the office that she planned to retire from her position in November or December 2017.  It was typical of the State of Maryland to post a position made vacant due to retirement approximately two months before the planned retirement.  Ms. Perry anticipated that the vacancy of Mrs. Perdue's position would be posted sometime in August or September 2017.

51.     Defendants requested a Task Analysis from Ms. Perry's medical provider.  Her medical provider completed a Task Analysis dated July 7, 2017.

52.     On August 14, 2017, Defendants sent Ms. Perry for a Preliminary Evaluation by the State Medical Director's Office/WORKPRO Occupational Health, Robert Toney, M.D. in Westminster, Maryland.  Dr. Toney referred Ms. Perry for an Independent Psychological Evaluation.

53.     On August 23, 2017, Ms. Perry underwent a psychological evaluation by Dr. Kimberly M. Deberry, a clinical psychologist.

54.     On September 7, 2017, Ms. Perry returned to Dr. Toney for a scheduled Workability follow up visit.  Dr. Toney produced a report regarding his findings dated September 7, 2017.  Dr. Toney opined that Ms. Perry "is not likely psychologically fit to efficiently perform her job duties at her current location at Deer's Head Hospital Center."  And that Ms. Perry "would be able to perform the essential job duties of an Agency Procurement Specialist in a different location."  Dr. Toney stated that it was his "recommendation that the agency take the appropriate administrative actions in terms of her employment status as an Agency Procurement Specialist II, unless she can be accommodated by working in a completely different location with different management and different staff."

55.     In a letter dated September 12, 2017, from Ms. Dashield to Ms. Perry, Ms. Dashield quoted parts of Dr. Toney's report dated September 7, 2017, and stated that reassignment to a different location was not an available accommodation because no vacancies were posted and advised Ms. Perry that she could provide a list of reasonable accommodations for consideration.  The letter concluded by stating that if accommodations cannot be granted,

11

then Ms. Perry could resign her position or apply for disability or service retirement. And, if Ms. Perry did not resign or retire, then she would be terminated.

56.      On September 20, 2017, the EEOC issued its Right to Sue Letter.

57.      On September 25, 2017, feeling like she had no other option, Ms. Perry filed for disability retirement with the State of Maryland. Ms. Perry has not received notice of acceptance or denial of her disability retirement application as of the filing of this Complaint.

58.      On October 9, 2017, more than 30 days after the date of Dr. Toney's letter, Ms. Perry received a Notice of Termination dated October 7, 2017, from Defendants. The "Cause(s) for Termination" were listed as "Comar 17.04.05.**04** B" and then COMAR language is listed from COMAR 17.04.05.**03** B. It is not clear which regulation is the Cause for Termination.

59.      On October 19, 2017, Ms. Perry filed an Appeal and Grievance Form related to the Notice of Termination with Defendants. Ms. Perry has not received a response as of the filing of this Complaint.

60.      The continued hostility and retaliation by Defendants, among others, was done intentionally and maliciously and for the purpose of intimidating Ms. Perry and it had the further purpose and effect of creating a hostile work environment wherein it would be difficult or impossible for her to adequately perform the responsibilities of her position as an Agency Procurement Specialist II.

61.      All of this conduct was intentional and committed because Ms. Perry filed a Complaint of sexual harassment by Mr. Perdue, the husband of Mrs. Perdue who was Ms. Perry's immediate supervisor.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964,**
**as amended 42 U.S.C. §§ 2000e** *et seq.*
**Discrimination Based on Sex**
**(*Plaintiff v. All Defendants*)**

62.     Plaintiff Perry incorporates herein by reference all of the allegations of

Paragraphs 1-61 above, as fully as if said allegations had been repeated at length herein and for a

cause of action against Defendants, states as follows:

63.     Title VII of the Civil Rights Act of 1964 has been interpreted to include sexual

harassment as a form of sex discrimination making it an unlawful employment practice for an

employer to create or condone an atmosphere that is intolerably infused with sex-based rancor or

lewdness so as to alter the terms and conditions of employment.

64.     At all times relevant to this Complaint, the State of Maryland, Maryland

Department of Health, and DHHC were employers subject to provisions of Title VII.

65.     At all times relevant to this Complaint, Plaintiff Perry was an employee entitled to

protection under Title VII.

66.     Plaintiff Perry filed an EEOC claim and has received a Right to Sue letter from

the Equal Employment Opportunity Commission, a copy of which is attached hereto as **Exhibit**

**1** and this suit was commenced within the 90 days of the issuance of such letter.

67.     All of the above is a direct and proximate result of the conduct of the individual

Defendants while acting individually and as the agents, servants, and officers or managers of the

State of Maryland, Maryland Department of Health, and/or DHHC.

68.     In violation of Title VII, Defendants' conduct as detailed above was motivated

and committed because of Plaintiff Perry's sex, including Defendants knowingly and

intentionally condoning an atmosphere that was intolerably infused with sex-based rancor or lewdness as to change the terms and conditions of employment.

69.     Defendants failed to perform any investigation into the sexually obscene email message, and instead actively participated in a cover-up of the email message, punishing Ms. Perry for receiving and complaining about the obscenity.

70.     Defendants failed to take any corrective action related to the sexually obscene email message, and instead actively participated in a cover-up of the email message.

71.     Defendants failed to follow its own policy regarding sexual harassment.

72.     Defendants' conduct was severe and pervasive.  It persisted frequently and on a nearly daily basis and for the entire duration of Plaintiff Perry's employment after she received the sexually obscene email message on October 1, 2015 until her termination in October 2017. Defendants' conduct altered Plaintiff Perry's terms and conditions of employment and left her unable to effectively do her job.  Plaintiff Perry was subject to these disadvantageous terms and conditions of employment that similarly situated male employees would not have been exposed.

73.     Defendants had no legitimate business reason for such acts.

74.     Defendants, at all relevant times, had actual and constructive knowledge of the conduct described above.

75.     As a result of such acts, Plaintiff Perry has suffered damages.

WHEREFORE, Plaintiff demands damages and judgment against Defendants, jointly and severally, in an amount which will compensate her for:

      a.     Violation of her rights under Title VII of the Civil Rights Act;

      b.     Back Pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by Defendants' discrimination;

14

c.     All fees, costs, and expenses, including attorneys' fees and expert fees;

d.     Punitive damages against Defendants to punish them for their willful, wanton, oppressive and malicious conduct;

e.     Trial by jury on all issues so triable;

f.     Pre-judgment and post-judgment interest; and

g.     Such other and further relief to which Plaintiff may be entitled.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. §§ 2000e *et seq.*
### Hostile Work Environment Based on Sex
### (*Plaintiff v. All Defendants*)

76.     Plaintiff Perry incorporates herein by reference all of the allegations of Paragraphs 1-75 above, as fully as if said allegations had been repeated at length herein.

77.     Title VII of the Civil Rights Act of 1964 states that it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex.

78.     A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation that substantially alters the work environment.

79.     At all times relevant to this Complaint, the State of Maryland, Maryland Department of Health, and DHHC were employers subject to provisions of Title VII.

80.     At all times relevant to this Complaint, Plaintiff Perry was an employee entitled to protection under Title VII.

81.     Plaintiff Perry filed an EEOC claim and has received a Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as **Exhibit 1** and this suit was commenced within the 90 days of the issuance of such letter.

82.     All of the above is a direct and proximate result of the conduct of the individual Defendants while acting individually and as the agents, servants, and officers or managers of the State of Maryland, Maryland Department of Health, and/or DHHC.

83.     In violation of Title VII, Defendants' conduct as detailed above was motivated and committed because of Plaintiff Perry's sex, including Defendants knowingly and intentionally giving her the silent treatment, refusing to communicate with her face to face, avoiding oral communication with Ms. Perry, unreasonably criticizing her work, excluding her from meetings, issuing her satisfactory performance evaluations, moving her to a low-level, clerical position doing data entry, isolating her office to an unoccupied area of the DHHC building, removing duties and responsibilities from Ms. Perry, removing her access and privileges to departmental equipment and documents, increasing supervision of Ms. Perry, avoiding oral communication with Ms. Perry, issuing her a Memorandum of Counseling, and terminating her.

84.     Defendants' conduct was severe and pervasive.  It persisted frequently and on a nearly daily basis and for the entire duration of Plaintiff Perry's employment after she received the sexually obscene email message on October 1, 2015 until her termination in October 2017. Defendants' conduct altered Plaintiff Perry's terms and conditions of employment and left her unable to effectively do her job.  Plaintiff Perry was subject to these disadvantageous terms and conditions of employment that similarly situated male employees would not have been exposed.

85.     Defendants had no legitimate business reason for such acts.

86.     Defendants, at all relevant times, had actual and constructive knowledge of the conduct described above.

87.     As a result of such acts, Plaintiff Perry has suffered damages.

WHEREFORE, Plaintiff demands damages and judgment against Defendants, jointly and severally, in an amount which will compensate her for:

a)     Violation of her rights under Title VII of the Civil Rights Act;

b)     Back Pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by Defendants' discrimination and hostility;

c)     All fees, costs, and expenses, including attorneys' fees and expert fees;

d)     Punitive damages against Defendants to punish them for their willful, wanton, oppressive and malicious conduct;

e)     Trial by jury on all issues so triable;

f)     Pre-judgment and post-judgment interest; and

g)     Such other and further relief to which Plaintiff may be entitled.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. §§ 2000e *et seq.*
### Retaliation
### (*Plaintiff v. All Defendants*)

88.     Plaintiff Perry incorporates herein by reference all of the allegations of Paragraphs 1-87 above, as fully as if said allegations had been repeated at length herein.

89.     Title VII of the Civil Rights Act of 1964 and the case law stemming from Title VII make it an unlawful employment practice for an employer to retaliate against employees who make complaints because retaliation contravenes the civil rights laws.

90.     At all times relevant to this Complaint, the State of Maryland, Maryland Department of Health, and DHHC were employers subject to provisions of Title VII.

17

91.     At all times relevant to this Complaint, Plaintiff Perry was an employee entitled to protection under Title VII.

92.     Plaintiff Perry filed an EEOC claim and has received a Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as **Exhibit 1** and this suit was commenced within the 90 days of the issuance of such letter.

93.     All of the above is a direct and proximate result of the conduct of the individual Defendants while acting individually and as the agents, servants, and officers or managers of the State of Maryland, Maryland Department of Health, and/or DHHC.

94.     In violation of Title VII, Defendants' conduct as detailed above was motivated and committed because of Plaintiff Perry's sex and because she made a complaint about the sexually obscene email message.  Defendants retaliated against her for reporting the sexual harassment by knowingly and intentionally giving her the silent treatment, refusing to communicate with her face to face, avoiding oral communication with Ms. Perry, unreasonably criticizing her work, excluding her from meetings, issuing her satisfactory performance evaluations, moving her to a low-level, clerical position doing data entry, isolating her office to an unoccupied area of the DHHC building, removing duties and responsibilities from Ms. Perry, removing her access and privileges to departmental equipment and documents, increasing supervision of Ms. Perry, avoiding oral communication with Ms. Perry, issuing her a Memorandum of Counseling, posting, interviewing and hiring for her supervisor's position while Ms. Perry was on medical leave, and terminating her.

95.     Defendants' conduct was severe and pervasive.  It persisted frequently and on a nearly daily basis and for the entire duration of Plaintiff Perry's employment after she received the sexually obscene email message on October 1, 2015 until her termination in October 2017.

Defendants' conduct altered Plaintiff Perry's terms and conditions of employment and left her unable to effectively do her job.

96.     Defendants had no legitimate business reason for such acts.

97.     Defendants, at all relevant times, had actual and constructive knowledge of the conduct described above.

98.     As a result of such acts, Plaintiff Perry has suffered damages.

WHEREFORE, Plaintiff demands damages and judgment against Defendants, jointly and severally, in an amount which will compensate her for:

a)     Violation of her rights under Title VII of the Civil Rights Act;

b)     Back Pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by Defendants' discrimination, hostility, and retaliation;

c)     All fees, costs, and expenses, including attorneys' fees and expert fees;

d)     Punitive damages against Defendants to punish them for their willful, wanton, oppressive and malicious conduct;

e)     Trial by jury on all issues so triable;

f)     Pre-judgment and post-judgment interest; and

g)     Such other and further relief to which Plaintiff may be entitled.

### COUNT IV
### Civil Conspiracy
### (*Plaintiff v. All Defendants*)

99.     Plaintiff Perry incorporates herein by reference all of the allegations of Paragraphs 1-96 above, as fully as if said allegations had been repeated at length herein.

100.     This Court has supplemental jurisdiction over this State claim pursuant to the provisions of 28 U.S.C. 1387, *et seq*.

101.    All of the above is a direct and proximate result of the conduct of the individual

Defendants while acting individually and as the agents, servants, and officers or managers of the

State of Maryland, Maryland Department of Health, and/or DHHC.

102.    Ms. Perry filed proper, timely, written notice of her claim in a letter to Maryland

Treasurer, Nancy K. Kopp, dated January 20, 2017, pursuant to the Maryland Tort Claims Act.

And Ms. Perry received a final denial of her claim from Treasurer Kopp in a letter dated January

26, 2017.

103.    Defendants, by agreement or understanding, committed the unlawful or tortious

acts detailed above in furtherance of their own personal and economic interests and to the

detriment of Ms. Perry.

104.    Such civil conspiracy was willful, wanton, oppressive, and malicious conduct.

105.    As a result of such acts, Plaintiff Perry has suffered damages.

WHEREFORE, Plaintiff demands damages and judgment against Defendants, jointly

and severally, in an amount which will compensate her for:

   a)    Compensatory damages, including economic and non-economic damages,
          created by Defendants' civil conspiracy;

   b)    All fees, costs, and expenses, including attorneys' fees and expert fees;

   c)    Punitive damages against Defendants to punish them for their willful,
          wanton, oppressive and malicious conduct;

   d)    Trial by jury on all issues so triable;

   e)    Pre-judgment and post-judgment interest; and

   f)    Such other and further relief to which Plaintiff may be entitled.

## COUNT V
### Intentional Infliction of Emotional Distress
### (*Plaintiff v. All Defendants*)

106.    Plaintiff Perry incorporates herein by reference all of the allegations of

Paragraphs 1-105 above, as fully as if said allegations had been repeated at length herein.

107.    This Court has supplemental jurisdiction over this State claim pursuant to the

provisions of 28 U.S.C. 1387, *et seq.*

108.    Ms. Perry filed proper, timely, written notice of her claim in a letter to Maryland

Treasurer, Nancy K. Kopp, dated January 20, 2017, pursuant to the Maryland Tort Claims Act.

And Ms. Perry received a final denial of her claim from Treasurer Kopp in a letter dated January

26, 2017.

109.    During the period of time that Plaintiff Perry was employed by Defendants, she

was repeatedly threatened, harassed, and intimidated by the individual Defendants acting on their

own behalf and as the agents, servants, employees, officers, managers and supervisors of the

State of Maryland, Maryland Department of Health, and DHHC.

110.    Some of the acts of Defendants are identified above and include, but are not

limited to, giving her the silent treatment, refusing to communicate with her face to face,

avoiding oral communication with Ms. Perry, repeatedly slamming the door between her office

and Mrs. Perdue's office, unreasonably criticizing her work, excluding her from meetings,

issuing her satisfactory performance evaluations, moving her to a low-level, clerical position

doing data entry, isolating her office to an unoccupied area of the DHHC building, removing

duties and responsibilities from Ms. Perry, removing her access and privileges to departmental

equipment and documents, increasing supervision of Ms. Perry, avoiding eye contact with Ms.

Perry, avoiding oral communication with Ms. Perry, issuing her a Memorandum of Counseling,

posting, interviewing and hiring for her supervisor's position while Ms. Perry was on medical leave, and terminating her.

111.    Defendants placed Plaintiff Perry in a position where it was difficult or impossible for her to perform the duties of her position.  Defendants are responsible for such acts and omissions of the individual Defendants.

112.    The conduct of the individual Defendants was persistent, intentional, and reckless and done knowing it was likely to cause Plaintiff Perry to suffer severe emotional distress.

113.    Defendants' conduct did in fact cause Plaintiff Perry to suffer severe emotional distress, anxiety, depression, Post-Traumatic Stress Disorder ("PTSD"), and emotional pain and suffering together with physical manifestations of nausea, vomiting, diarrhea, headache, nervousness, insomnia, and difficulty breathing.

114.    Defendants' conduct was extreme and outrageous and beyond the bounds of decency. It was intentional, malicious, and willful and done after repeated requests for cessation with the specific intent to injure Plaintiff Perry and to force her into resigning her position with the State of Maryland.

115.    As a direct and proximate result of the intentional acts of Defendants, Plaintiff Perry was caused to suffer extreme emotional, mental, and physical distress.

WHEREFORE, Plaintiff demands damages and judgment against Defendants, jointly and severally, in an amount which will compensate her for:

a)    Compensatory damages for emotional distress and hardship created by Defendants' discrimination, hostility, and retaliation;

b)    All fees, costs, and expenses, including attorneys' fees and expert fees;

c)    Punitive damages against Defendants to punish them for their willful, wanton, oppressive and malicious conduct;

d)      Trial by jury on all issues so triable;

e)      Pre-judgment and post-judgment interest; and

f)      Such other and further relief to which Plaintiff may be entitled.

Date:  December  6 , 2017

James L. Otway, Esquire
(Federal Bar #22717)
jotway@otwayrusso.com

Amy L. Taylor, Esquire
(Federal Bar #18425)
ataylor@otwayrusso.com

OTWAY RUSSO, P.C.
108 West Main Street
Salisbury, Maryland 21801
Telephone 410-749-3900
Facsimile 410-749-8577
*Attorneys for Plaintiff*

# Exhibit 1



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7003 0500 0002 5071 4376

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington. DC 20530*

September 20, 2017

Ms. Sandra Perry
c/o Ashley A. Bosche, Esquire
Law Offices of Cockey, Brennan & Maloney
313 Lemmon Hill Lane
Salisbury, MD 21801

Re: EEOC Charge Against Deer's Head Hospital Center
   No. 531201600813

Dear Ms. Perry:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Baltimore District Office, Baltimore, MD.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

John M. Gore
Acting Assistant Attorney General
   Civil Rights Division

by *Karen L. Ferguson*
   Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Baltimore District Office, EEOC
   Deer's Head Hospital Center