### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SANDRA R. PERRY | |
| Plaintiff | |
| v. | Civil Action No. 1:17-cv-03619-MJG |
| STATE OF MARYLAND *et al.* | |
| Defendants | |

## Memorandum of Law in Support of Motion to Dismiss

Allen J. Perdue, Defendant, by and through his attorneys, John K. Phoebus, Kristy M. Hickman, and Anthenelli, Phoebus & Hickman, LLC, supplies this honorable Court with the following Memorandum of Law in support of his contemporaneously filed motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

Sandra Perry, Plaintiff, (herein "Perry") has brought three substantive federal claims of discrimination under Title VII of the Civil Rights Act of 1964 against her employer, either Deer's Head Hospital Center, the Maryland Department of Health, or the State of Maryland, and her supervisors or co-workers, whom she alleges are Mary Beth Wade, Kenneth Waller, Elizabeth Perdue, and Luanne Dashield, all also employees of Deer's Head Hospital Center, the Maryland Department of Health, or the State of Maryland, and Allen John Perdue, whom is neither her employer nor even a co-worker. Allen Perdue does not and has never worked at Deer's Head Hospital Center or for the Maryland Department of Health. He is merely the

spouse of one of the supervisors or co-workers of Perry. Allen Perdue is not an "employer" of Perry and, thus, her three varieties of claims under 42 U.S.C. §§ 2000e *et seq.* (herein"Title VII") cannot stand against this Defendant. Perry has asserted that Allen Perdue has civilly conspired with these other defendants to commit violations of Title VII. Under Maryland state law, a person can only be liable for civil conspiracy if they are part of a class of persons who could be liable for the underlying tort. Because a person who is not Perry's employer cannot be liable for a violation of Title VII, Perry's claim of civil conspiracy fails as to this Defendant.

Perry brings a state claim of intentional infliction of emotional distress against Allen Perdue. She claims only that she received a single, sexually suggestive and inappropriate email from an email account she believes was Allen Perdue's. This email and its content, without more, fail to meet the extreme and outrageous conduct required to support a claim of IIED under Maryland law. Furthermore, Perry fails to allege a causal connection between the email and any severe emotional distress on the part of Perry necessary to support a claim of IIED.

## II. FACTUAL BACKGROUND

On December 6, 2017, Perry filed her Complaint alleging five counts. (*See* Plaintiff's Complaint). Perry sued her employer, either the State of Maryland, the Maryland Department of Health, or Deer's Head Hospital Center (herein "Deer's Head"). She sued Mary Beth Wade, the executive director of Deer's Head, (*Id.* at ¶ 5), Kenneth Waller, the Chief Financial Officer (*Id.* at ¶ 6), Elizabeth Perdue, her immediate supervisor, (*Id.* at ¶ 7), and Luanne Dashield, human resources/personnel director and/or chief operating officer, (*Id.* at ¶ 9), all of whom were also employees and putatively supervisors of Perry. She sued this Defendant, Allen Perdue, husband of Elizabeth Perdue. (*Id.* at ¶ 8).

Perry alleges that she received an email on October 1, 2015 from the email address of "leglover13@hotmail.com" which stated "are you an exhibitionist? love those short skirts and your long legs. when you bent over your cheeks looked great. do you go commando? my picture says so? need more personal contact. you might agree by sending me proof and if you shave. I know you don't want this circulated." (*Id.* at ¶¶ 16-17.)  Perry claims she reported this to Elizabeth Perdue, Kenneth Waller, and the IT Department and that, later the same day, she performed a Google search, ostensibly linking the email to this Defendant, Allen John Perdue. (*Id.* at ¶¶ 18-20.)

The final allegation in Perry's Complaint concerning this Defendant, Allen Perdue, comes in a footnote, in which she alleges and speculates:

> Mr. Perdue had visited his wife, Mrs. Perdue, at work on occasion, During the course of those visits, Ms. Perry had met Mr. Perdue. Mr. Perry's interaction with Mr. Perdue at the workplace was limited to polite conversation. Mrs. Perdue had also included Ms. Perry and her husband on group emails from which Mr. Perdue may have obtained Ms. Perry's work email address.

(*Id.* at ¶ 21 n.2.). No other facts are alleged concerning Allen Perdue.

Perry alleges that Elizabeth Perdue and Kenneth Waller did not take action based on her complaint. (*Id.* at ¶ 19, 22.) She alleges that she reported her complaint about both the email and Elizabeth Perdue's and Waller's lack of response to the Human Resources department, requesting that Allen Perdue be banned from Deer's Head. (*Id.* at ¶ 24.) Perry claims that, following HR Director Dashield's report of the complaint to Elizabeth Perdue that Mrs. Perdue "initiated a pattern of hazing, harassment, hostility and isolation" toward Perry. (*Id.* at ¶ 25.)

Perry alleges that one month later, on October 30, 2015, she requested that she be removed from Elizabeth Perdue's supervision. (*Id.* at ¶ 27.) She alleges that this same day she "began medical treatment as a result of stress, anxiety, and depression caused by the sexual harassment and ensuing retaliation and hostile work environment." (*Id.* at ¶ 28.) Her request for a reassignment was granted and she began working a different position, in a different part of the building, not under Elizabeth Perdue's supervision on November 24, 2015. (*Id.* at ¶ 29.) She complained that she was being punished and asked that they reconsider this reassignment, due to a reduction of her duties and relocation to an isolated section of the hospital. (*Id.* at ¶ 32.) Perry claims that, on December 4, 2015, she was informed that her request would not be reconsidered, causing her to have had a panic attack, for which she went to her doctor. (*Id.* at ¶ 33-34.) She took medical leave from December 6, 2015 through February 28, 2016. (*Id.* at ¶ 35.)

Perry alleges she was again put out of work by her doctors, ostensibly related to "stress, anxiety and depression created by the sexual harassment and ensuing retaliation and hostile work environment" from April 10, 2017 to July 5, 2017. (*Id.* at ¶ 47, 50.) She claims that she applied for disability and was terminated by her employer. (*Id.* at ¶ 57-58.)

Significantly, except for Perry's claim and belief that the October 1, 2015 email from leglover13@hotmail.com came from Defendant Allen Perdue, her Complaint contains no factual allegations concerning this Defendant other than her general characterization of his in-person interactions with her as professional, brief, and appropriate.

Perry's Complaint, in counts one, two, and three, alleges causes of action for violations of Title VII of the Civil Rights Act of 1964, specifically "Discrimination Based on Sex", (*Id.*

at ¶¶ 62-75), "Hostile Work Environment Based on Sex", (*Id.* at ¶¶ 76-87), and "Retaliation". (*Id.* at ¶¶ 88-98). In count four, Perry purports to set forth a state claim of civil conspiracy. (*Id.* at ¶¶ 99-105.) She specifically alleged that "Defendants, by agreement or understanding, committed the unlawful or tortious acts detailed above in furtherance of their own personal and economic interests and to the detriment of Ms. Perry." (*Id.* at ¶ 103.) In count five, Perry purports to set forth a state claim of intentional infliction of emotional distress. (*Id.* at ¶¶ 106-115.) All five of Perry's claims have been made as to all Defendants.

### III. ARGUMENT

Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint, to survive a 12(b)(6) challenge, must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads all factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

### A.     Perry's Complaint Fails to State a Claim Against Allen Perdue for Violations of Title VII because Allen Perdue is not an "Employer".

Perry does not claim that Allen Perdue was her employer. Perry claims that she was "employed by the State of Maryland, Department of Health at Deer's Head Hospital Center."

(Plaintiff's Complaint ¶ 1.) Allen Perdue is married to Elizabeth Perdue, who was Perry's immediate supervisor. (*Id.* at ¶ 7, 8.)

Causes of action under Title VII may only be asserted against persons who are "employers". That term is defined by statute:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C.A. § 2000e(b) (West).

The proscriptions on conduct contained in Title VII are directed to persons who are an employer, an employment agency, a labor organization, or a joint labor-management committee. *See* 42 U.S.C.A. § 2000e-2. 2000e-3. This Defendant is alleged to be none of these.

The Fourth Circuit has rejected efforts to impose Title VII liability on supervisors in their individual capacities for sexual harassment or discrimination on the basis of sex in violation of Title VII. In *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177 (4th Cir. 1998), the Circuit Court of Appeals applied the reasoning of *Birkbeck v. Marvel Lighting Corp*, 30 F.3d 507 (4th Cir. 1994), which had held there is no liability for supervisors in their individual capacity for violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, to hold that the definition of "employer" or any "agent of such a person" under Title VII does not encompass supervisors in their individual capacity:

> The Title VII definition of employer must be read in the same fashion as the ADEA definition of employer. Title VII defines employer to include certain persons who employ fifteen or more workers and, like the ADEA, "any agent of such a person." *Compare* 42 U.S.C. § 2000e(b), with 29 U.S.C. § 630(b); *see also Wathen v. General Elec. Co.*, 115 F.3d 400, 404 n. 6 (6th Cir.1997) (noting that Title VII and ADEA "define 'employer' essentially the same way"); *EEOC v. AIC Sec. Investig., Ltd.*, 55 F.3d 1276, 1280 n. 1 (7th Cir.1995) (noting that the two definitions are "essentially identical"). We already have observed that Title VII is the ADEA's "closest statutory kin." *Birkbeck*, 30 F.3d at 510 (citations omitted). Thus, reading Title VII to foreclose individual liability represents the only logical extension of *Birkbeck*. Like the ADEA, Title VII exempts small employers; it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company. *See id.* We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. *See Birkbeck*, 30 F.3d at 510-11; *Miller v. Maxwell's Int'l. Inc.*, 991 F.2d 583, 587 (9th Cir.1993).

*Lissau*, 159 F.3d at 180.

If an individual supervisor who actually is in an employee's "chain of command" cannot be held individually liable, then the spouse of such a person, regardless of whether they are alleged to have sent an email into a workplace, cannot be individually liable for a violation of Title VII.

Just as Perry's claims for violations of Title VII should fail as to Mary Beth Wade, Kenneth Waller, Elizabeth Perdue, and Luanne Dashield, because they are individuals and not her employers (even though they might be her supervisors in some capacity), so should her Title VII claims as to Defendant Allen Perdue also fail. In counts one, two, and three of her complaint, she has failed to state causes of action under Title VII against Allen Perdue, because individual liability for non-employers does not exist under federal law and the teachings of *Birkbeck* and *Lissau*.

**B.**  **Perry's Complaint Fails to State a Claim Against Allen Perdue for Civil Conspiracy Because Allen Perdue Cannot Be Liable as an Individual for a Violation of Title VII, the Putative Object of the Conspiracy.**

The Fourth Circuit has recognized that, under Maryland, law, "a defendant may not be adjudged liable for civil conspiracy unless the defendant was legally capable of committing the underlying tort alleged." *Marshall v. James B. Nutter & Co.*, 758 F.3d 537 (4th Cir. 2014) (quoting *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 983 A.3d 408, 428 (Md. 2009)).

Here, Defendant Allen Perdue was not legally capable of violating any of the provisions of Title VII, as alleged in counts one through three of Perry's Complaint because he was not an "employer" of Perry and there is no private cause of action against individuals other than employers under Title VII.

The Fourth Circuit explained Maryland's law on civil conspiracy in *Marshall*. Unlike criminal conspiracy, which punishes the agreement to commit a crime and an overt act, Maryland requires actual damages from either an unlawful act or unlawful conduct in furtherance of an act that causes actual damages to a plaintiff. *See Marshall*, 758 F.3d at 541. The Fourth Circuit explained that "civil conspiracy requires an agreement, and an overt act in furtherance of the agreed-to unlawful conduct that causes injury, as well as the legal capacity of the conspirators to complete the unlawful conduct." *Id.*

The Fourth Circuit discussed in *Marshall* the Maryland case of *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 983 A.3d 408 (Md. 2009). There, shareholders of a company alleged that the board of directors had breached their fiduciary duty in negotiating a merger of the company, where the shareholders were to receive a cash buy out. In addition to suing the board of directors, the shareholders also sued third-party investors for "conspiring with the board

members in their breach of their fiduciary duties." *Marshall*, 758 F.3d at 541. The Maryland Court of Appeals explained that

> [T]ort liability arising from a conspiracy presupposes that the coconspirator is legally capable of committing a tort, that is, that [the coconspirator] owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty. … [A] cause of action for civil conspiracy may therefor not arise if the alleged conspirator, though allegedly a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing.

*Id.* at 541-42 (quoting *Shenker*, 938 A.3d at 428-29) (internal quotation marks omitted). Because, in *Shenker*, "the investors owed no fiduciary duties to the shareholders [, they] therefore could not be legally liable for civil conspiracy." *Marshall*, 758 F.3d at 542.

In *Marshall*, the Fourth Circuit held that this honorable Court correctly dismissed a complaint against a lender for civilly conspiring with a mortgage broker to violate the Maryland Finder's Fee Act, which prohibited mortgage brokers from charging a finder's fee for referring borrowers to lenders. Because the act only prohibited brokers from charging such a fee, and not lenders from paying it, the Fourth Circuit held that "Nutter was not legally capable of violating [the finder's fee act] and therefore, under *Shenker*, cannot be held liable for conspiring to violate [the finder's fee act]." *Id.* at 542.

As set forth in Part III(A), above, Allen Perdue cannot be liable for violating Title VII because he is not an employer. Since he could not have been liable for the underlying violations of Title VII, he cannot be liable for conspiring with others, even those capable of violating Title VII, to do so.

Perry's civil conspiracy count is enumerated as count four were she alleges that all of the Defendants conspired and did in fact commit "the unlawful or tortious acts detailed *above*".

9

(Plaintiff's Complaint ¶ 103) (emphases added). The only counts "above" count four allege violations of Title VII, which Allen Perdue is not legally capable of committing given his status as a non-employer of Perry. The Plaintiff does not allege that the defendants conspired to intentionally inflict emotional distress on her, alleged "below" count four in count five of her Complaint.

None of the individual Defendants, including Allen Perdue, were capable of violating Title VII because none of them are employers. Under *Marshall* and *Shenker*, Perry's Complaint fails to state a cause of action against any of them, including this Defendant, for civil conspiracy to violate Title VII.

**C.      Perry Has Failed to State a Claim Against Allen Perdue for Intentional Infliction of Emotional Distress.**

To state a claim, under Maryland state law, for intentional infliction of emotional distress (IIED), a plaintiff's complaint must allege facts that would establish the following elements: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe. *See Harris v. Jones*, 281 Md. 580, 566, 380 A.2d 611, 614 (1977).

Perry's Complaint does not describe conduct by Allen Perdue that was "extreme and outrageous", nor does she allege a causal connection between such conduct and severe emotional distress. At most, the email represented a single instance of unwanted sexual attention by a stranger.

Perry alleges that an email she attributes to Allen Perdue was received by her on October 1, 2015. The alleged contents of this email are sexually suggestive and inappropriate. The contents, in and of themselves, are not, however, extreme and outrageous.

Quoting from the Restatement, the Maryland Court of Appeals in *Harris*, the case which first recognized the tort of IIED in Maryland, cautioned that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 614. The Maryland court quoted with approval the limits of this tort as not extending "to mere insults, indignities, threats, annoyance, petty oppressions, or other trivialities… plaintiff must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.* (quoting Restatement (Second) of Torts, Section 46, comment d).

The presence or absence of a special relationship between a defendant and plaintiff along with the defendant's knowledge of a plaintiff's vulnerability or mental frailties is a factor in determining whether conduct is "extreme and outrageous". The different outcomes in the cases of *Figueiredo-Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (Md. 1991), and *Homer v. Long*, 90 Md. App. 1, 599 A.2d 1193 (Md. Ct. Spec. App. 1992), highlight the difference of a suit against a defendant who has a power relationship and unique knowledge of a plaintiff's weaknesses and a defendant who does not, even though both involved virtually identical conduct.

In *Figueiredo-Torres*, Dr. Torres was hired by a husband and wife to treat them both with the purposes of preserving and improving their marriage, but he used that relationship to

alienate the husband from his wife and to ultimately initiate a sexual relationship with the wife, causing severe emotional injury to the husband. The Maryland Court of Appeals contrasted that identical behavior by a stranger might not be actionable, but this wrongful conduct by a psychiatrist who abuses the doctor-patient relationship is:

> Coming from a stranger, or even a friend, this conduct may not be outrageous, but we are not prepared to state as a matter of law that such behavior by a psychologist which takes advantage of the patient's known emotional problems is not extreme and outrageous conduct sufficient to support an intentional infliction of emotional distress claim.

*Figueiredo -Torres*, 321 Md. at 622, 584 A.2d at 76.

Contrast to *Figueiredo,* the Maryland Court of Special Appeals decision in *Homer v. Long,* where virtually identical conduct by a psychiatrist did not result in civil liability because of the absence of a doctor-patient relationship between the treating psychiatrist and the plaintiff-husband. There, a psychiatrist paid by a husband to treat his wife relating to her depression likewise initiated a sexual relationship with his wife, and was sued by the husband for IIED. Maryland's intermediate appellate court held that, because the husband was not in a professional relationship with the psychiatrist, the doctor's conduct was not extreme and outrageous as to the husband based upon the lack of a special relationship. *Horner*, 90 Md. App. at 12-13, 599 A.2d at 198.

Here, at most Perry has claimed that Defendant Allen Perdue sent to her a single, unwanted, sexually suggestive and even sexually explicit email. There is no indication that Defendant Allen Perdue was in any special relationship with Perry, such as would give rise to a heightened duty to her, or would create a context in which otherwise simply insulting or rude behavior would be viewed as "extreme and outrageous." Nor does Perry allege that she had

some sort of special vulnerability or that Defendant Allen Perdue was aware of any such special vulnerability that would make otherwise rude but ordinarily rude behavior rise to the level of "extreme and outrageous." Perry's claim fails because a single email alone and the content of this specific email does not rise to the level of "extreme and outrageous" conduct.

Perry's claim is also fatally flawed because a claim of intentional infliction of emotional distress must demonstrate a causal connection between the complained of conduct and "severe emotional distress." Perry's complaint does not allege any severe emotional distress following her receipt of the email on October 1, 2015. She describes feeling "extremely uncomfortable and threatened." (Plaintiff's Complaint at ¶ 18.) However, she was able to report the email to various persons at her place of employment, contact the IT staff, perform Google searches, question IT staff, retrieve messages from a spam folder, and make various complaints to the HR department at her place of employment. (*Id.* at ¶¶ 18, 20-21, 23-24.) She alleges no emotional distress other than fear and feelings of discomfort.

Perry describes receiving medical treatment on October 30, 2015 for "stress, anxiety, and depression", but attributes this to "the sexual harassment and ensuing retaliation and hostile work environment. (*Id.* at ¶ 28.) Perry describes suffering a panic attack on December 4, 2015 that resulted in her seeking the care of a therapist and receiving 12 weeks of medical leave, but attributes this panic attack as occurring "upon hearing [the] news" that her supervisors would not reconsider their reassignment and relocation of Perry at Deer's Head. (*Id.* at ¶¶ 33-34.) Maryland law requires that, to meet the level of severe emotional distress required to prevail on a claim of IIED, "there must be a 'severely disabling emotional response,' so acute that 'no reasonable man could be expected to endure it.'" *Moniodis v. Cook*,

64 Md. App. 1, 15, 494 A.2d 212, 220 (Md. Ct. Spec. App. 1985) (citing *Harris v. Jones*, 281 Md. 560, 570, 380 A2d 611, 616 (Md. 1977).

The day she received the email, Perry avers she was able to function as one would expect a person who received an offensive email to function. She contacted supervisors, investigated, and continued to press her complaint up the chain of authority at Deer's Head. She does not describe a "severely disabling emotional response" to the email. Nothing on the day she received the offending email, resulted in anything more than, in Perry's words, discomfort and fear. Her response to the email does not rise to the level of a severe and disabling emotional response necessary to support a claim of IIED.

The December 4, 2015 panic attack alleged by Perry is not claimed to have a causal connection to the email, except to the extent that the email precipitated her complaints to her supervisors and, at least to Perry, a dissatisfactory response. To suggest that an October 1, 2015 email from allegedly this Defendant and no further contact would culminate in a panic attack more than two months thereafter defies both belief and common sense. Perry has failed to allege a causal connection between the email and any later emotional or psychological reactions. More likely, Perry is alleging that her panic attack directly resulted from the news she received from her supervisors that she would not again be moved.

As this Court has recognized:

"Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves." As inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law.

14

*Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002) (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (Md. 1991).

Perry has not met the high burden of pleading facts that would support a claim of intentional infliction of emotional distress. A single, offensive email is not extreme and outrageous conduct. Mere discomfort and a feeling of being threatened is not the sort of severe emotional distress required for a claim to be actionable and there is no causal connection between the email and any more serious damages that Perry has claimed.

WHEREFORE, Defendant Allen John Perdue respectfully requests that this honorable Court grant his Motion to Dismiss for Failure to State Claim Upon Which Relief Can Be Granted.


/ s /
_____
John K. Phoebus, Bar Number 25169
ANTHENELLI, PHOEBUS & HICKMAN, LLC
134 East Main Street
P.O. Box 4366
Salisbury, Maryland 21803
tel. (410) 749-3700
fax (410) 749-7550
john@phoebuslaw.com


/ s /
_____
Kristy M. Hickman, Bar Number 13893
ANTHENELLI, PHOEBUS & HICKMAN, LLC
134 East Main Street
P.O. Box 4366
Salisbury, Maryland 21803
tel. (410) 749-3700
fax (410) 749-7550
khickman@phoebuslaw.com

Attorneys for Defendant Allen J. Perdue

Date: December 29, 2017