IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA R. PERRY                    *

            Plaintiff            *

        vs.                      * CIVIL ACTION NO. MJG-17-3619

STATE OF MARYLAND, et al.         *

            Defendants            *

*      *      *      *      *      *      *      *      *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendants' Motion to Dismiss [ECF
No. 10], Defendant Allen J. Perdue's Motion to Dismiss for
Failure to State A Claim Upon Which Relief Can Be Granted [ECF
No. 11], and the materials submitted relating thereto.  The
Court finds that a hearing is not necessary.


I.    BACKGROUND

      A. Parties and Claims

Plaintiff Sandra R. Perry ("Plaintiff" or "Perry") was an
Agent Procurement Specialist at Deer's Head Hospital Center
("DHHC"), and was terminated from employment in October 2017.
Compl. ¶¶ 1, 58.  Defendants are (1) the State of Maryland, (2)
Maryland Department of Health, (3) DHHC, (4) Mary Beth Waide,
(5) Kenneth Waller, (6) Elizabeth Perdue, (7) Allen John Perdue,

and (8) Luanne Dashield.[1]  Plaintiff brings the following claims against each Defendant:

| Count | Title |
|-------|-------|
| I | Title VII: Discrimination Based Upon Sex |
| II | Title VII: Sexual Harassment (Hostile Work Environment) |
| III | Title VII: Retaliation |
| IV | Civil Conspiracy |
| V | Intentional Infliction of Emotional Distress |

All Defendants have moved to dismiss the Complaint [ECF Nos. 10 and 11], although Allen J. Perdue's motion to dismiss is contained in a separate filing [ECF No. 11].

B. Facts As Alleged by Perry [2]

Plaintiff Perry was employed by DHHC from 2009 to 2017 as an "Agency Procurement Specialist II," meaning that she was responsible for "procuring equipment, services, supplies, and other needs" for DHHC through a competitive procurement process. Compl. ¶¶ 12-13.  On October 1, 2015, Plaintiff received the

---

[1] DHHS is a state-owned rehabilitation and long term care facility. Defendant Waide, Waller, and Dashield are alleged to be the Executive Director of DHHC, the CFO of DHHC, and the HR/Personnel Director of DHHC, respectively.  Compl. ¶¶ 5-6, 9.  Defendant Elizabeth Perdue was Plaintiff's immediate supervisor, and Defendant Allen John Perdue is Mrs. Perdue's husband.  Id. ¶¶ 7-8.

[2] Defendants do not necessarily agree with these allegations.

following email message to her work email address, from

<leglover13@hotmail.com>:

> are you an exhibitionist? love those short
> skirts and your long legs. when you bent
> over your cheeks looked great. do you go
> commando? my picture says so? need more
> personal contact. you might agree by sending
> me proof and if you shave. I know you don't
> want this circulated.

Id. ¶¶ 16-17.  Plaintiff did not recognize the email address,

felt "extremely uncomfortable and threatened," and reported the

email to her supervisor (Defendant Elizabeth Perdue) and her

department director (Defendant Waller), neither of whom took

action.  Id. ¶¶ 18-19.

Later that same day, she "determined, by performing a

Google search that the sexually harassing email message came

from Allen John Perdue, who is the husband of [her] immediate

supervisor, Mrs. Beth Perdue."[3]  Id. ¶ 20.  Plaintiff explained

this finding to Defendant Waller and "members of the IT staff"

yet still received no response.  Id. ¶¶ 21-22.  Afterwards, a

member of the IT staff allegedly went onto her computer and

moved the email message from her inbox to the spam folder.  Id.

¶ 23.  Plaintiff retrieved the email from the spam folder,

shared it with the Human Resources Department, and requested

---

[3] Plaintiff previously met Mr. Perdue when he visited his wife at work.
The interaction "was limited to polite conversation."  Id. ¶ 21 n. 2.
Plaintiff alleges that Mr. Perdue had gotten her email address from
"group emails" on which she and Mr. Perdue were both included.  Id.

that Human Resources address this matter with Mrs. Perdue and prelude Mr. Perdue from entering the premises. Id. ¶ 24.

Following the incidents on October 1, 2015, Plaintiff alleges that Defendant Elizabeth Perdue "initiated a pattern of hazing, harassment, hostility, and isolation" directed at Plaintiff, including giving her "the silent treatment" and "bec[oming] critical" of her work performance. Id. ¶ 25. Plaintiff alleges that her complaints about Defendant Elizabeth Perdue were ignored, that she was refused a request for a different supervisor, that she began medical treatment for stress, anxiety, and depression. Id. ¶¶ 26-28.

In November 2015, Defendant Dashield informed Plaintiff that she was assigned to a "clerical position of 'timekeeping,'" which was a lower level position than her procurement position and was located in an "unoccupied area of the DHHC building." Id. ¶¶ 29-30, 33. Upon hearing that this position would be permanent, Plaintiff allegedly suffered a panic attack and had to take 12 weeks of medical leave. Id. ¶¶ 34-35.

On February 11, 2016, Plaintiff filed a charge of discrimination with the EEOC, alleging sexual harassment and retaliation. Id. ¶ 37. She returned to work soon thereafter (in her original procurement position), and continued to be supervised by Defendant Elizabeth Perdue. Id. ¶ 36. Ms. Perdue

allegedly began to remove responsibilities from Plaintiff,
including personally handling responsibilities for which
Plaintiff used to handle, not providing Plaintiff with access to
files that she believed she needed to effectively complete her
work, and changing the way contract review was assigned so that
Plaintiff had fewer independent responsibilities.  Id. ¶¶ 36-39,
41-43.  Ms. Perdue also "slamm[ed] office doors, slamm[ed]
filing drawers, and slamm[ed] restroom doors" whenever Plaintiff
was nearby.  Id. ¶ 40.

During this time, Plaintiff discovers a 6-month performance
review finalized during her medical leave that gave her work a
rating of "Satisfactory," even though she had always received an
"Outstanding" performance review prior to her medical leave.
Id. ¶¶ 14, 44.

On April 10, 2017, Plaintiff was approved for, and took,
another three-month long medical leave as a result of "stress,
anxiety, and depression."  Id. ¶¶ 47-48.  Although she was
scheduled to return to work on July 5, 2017, on that date she
stated that she was not medically cleared to return to work due
to stress, anxiety and depression.  Id. ¶ 50.  Defendants
requested a Task Analysis from Plaintiff's medical provider, and
sent Plaintiff for a medical evaluation by a doctor at the State
Medical Director's Office, who reported that Plaintiff "is not

likely psychologically fit to efficiently perform her job duties at her current location at Deer's Head Hospital Center" but that Plaintiff "would be able to perform [her] duties . . . in a different location." Id. ¶¶ 51-54.

Following this medical evaluation, Defendant Dashield wrote a letter to Plaintiff on September 12, 2017, stating that reassignment was not feasible due to a lack of vacancies and that "a list of reasonable accommodations" could be provided but not guaranteed. Id. ¶ 55. The letter "concluded by stating that if accommodations cannot be granted," then Plaintiff could resign, apply for disability or service retirement, or be terminated. Id.

Plaintiff filed for disability retirement on September 25, 2017, and was formally terminated by letter on October 7, 2017. Id. ¶¶ 57-58.

II. LEGAL STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff.  However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice.  Id.  A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted).

III.  DISCUSSION

Many of the issues in this case have already been resolved by the parties.  Plaintiff does not object to the dismissal of

Counts I, II, and III against all of the Individual Defendants (i.e., Defendants Waide, Waller, Elizabeth Perdue, Allen J. Perdue, and Dashield). Pl.'s Resp. at 6, ECF No. 13; Pl.'s Resp. at 6, ECF No. 14. Plaintiff also does not object to the dismissal of Count IV against all Defendants, and the dismissal of Count V as to all Defendants except Allen John Perdue. Pl.'s Resp. at 6, ECF No. 13; Pl.'s Resp. at 6, ECF No. 14. Accordingly, the remaining claims are:

(A) Counts I, II, and III against the State of Maryland, the Maryland Department of Health, and DHHC, and

(B) Count V against Allen John Perdue.

### A. Title VII Claims (Counts I, II, and III)

#### i. Count I: Discrimination Based Upon Sex

In Count I, Plaintiff alleges that she was discriminated against on the basis of her sex because she was subjected to sexual harassment, which conflates discrimination and sexual harassment charges under Title VII. The Court will first address the discrimination charge, and then address the sexual harassment charge as part of Count II (i.e. hostile work environment).

"As a general matter, to make out a prima facie case for employment discrimination, the Plaintiff must show that: (1) [s]he is a member of a protected group; (2) [s]he earned satisfactory performance marks, (3) [s]he suffered an adverse employment action; and (4) other similarly situated employees outside [her] protected class were treated more favorably." McCain v. Waste Mgmt., Inc., 115 F. Supp. 2d 568, 573 (D. Md. 2000).

Even taking all of Plaintiff's allegations as true, Plaintiff has not stated sufficient facts to make a prima facie case that she was discriminated against on the basis of her sex (i.e., that other similarly situated employees were treated more favorably than she was because of her sex). Her allegation of discrimination based on sex is based on an obscene email allegedly sent by a non-employee to her work email address, and the subsequent lack of action from the Defendants. Her other factual allegations about the changes in her work conditions (including termination) appear to flow from this single incident.

Importantly, she does not allege facts in the Complaint showing that other similarly situated employees outside her class (of women) were treated more favorably. In fact, she does not even mention any other agency procurement specialists who

worked at DHHC.  Although she does allege that a "storeroom
staff supply offer" performed some of her duties during medical
leave, she does not allege that he was treated more favorably
than she was on the basis of sex.  Compl. ¶ 41.

Accordingly, the Court shall grant Defendants' motion to
dismiss Count I.


### ii. <u>Count II: Hostile Work Environment</u>

To establish a hostile work environment sexual harassment
claim, a plaintiff must prove that:

> (1)  the subject conduct was unwelcome;
>
> (2)  it was based on the sex of the
>      plaintiff;
>
> (3)  it was sufficiently severe or pervasive
>      to alter the plaintiff's conditions of
>      employment and to create an abusive
>      work environment; and
>
> (4)  it was imputable on some factual basis
>      to the employer.

<u>Spicer v. Com. of Va., Dep't of Corr.</u>, 66 F.3d 705, 710 (4th
Cir. 1995).

In assessing whether a work environment is objectively
hostile, it is necessary to consider "'all the circumstances,'
including 'the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating,

or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Anderson v. G.D.C., Inc., 281 F.3d 452, 459 (4th Cir. 2002). Moreover, "[o]n the fourth element for establishing employer liability, [the Fourth Circuit has] repeatedly held that an employer cannot be held liable for isolated remarks of its employees unless the employer 'knew or should have known of the harassment, and took no effectual action to correct the situation.'" Spicer, 66 F.3d at 710.

Plaintiff has not stated facts sufficient to support a prima facie claim of sexual harassment based on a hostile work environment. The facts alleged do not show conditions "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment[.]" Id. Although the contents of the email were clearly obscene, the sexually offensive conduct happened only once (i.e., the October 1, 2015 email) and does not rise to the level of "sufficiently severe or pervasive" as to warrant relief under the circumstances. The other actions allegedly taken by Defendants (e.g., reducing or changing her responsibilities, slamming doors, giving her the cold shoulder, preventing her from accessing certain files) were not sexually harassing actions and could not be based upon Plaintiff's sex.

11

Accordingly, the Court shall grant Defendants' motion to dismiss Count II.

### iii. Count III: Retaliation

To state a prima facie claim for retaliatory discrimination, the Plaintiff must show "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). If the Plaintiff makes this showing, the burden shifts back to the Defendants "to show that [the] purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Id.

Plaintiff argues that the "protected" activities include (1) taking medical leave and (2) filing a Charge of Discrimination with the EEOC alleging sexual harassment and retaliation. Pl.'s Resp. at 12, ECF No. 13. She argues that as a result of these two activities, she suffered adverse employment consequences (e.g., limits to her access and privileges, increased supervision and decreased responsibilities, and termination). Defendants argue that

Plaintiff's retaliation claim must be dismissed because "no protected activity took place." Defs.' Reply at 6, ECF No. 15.

Section 704(a) of Title VII provides that an employee engages in protected activity when she "oppose[s] any practice made an unlawful employment practice by this subchapter" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In sum, protected activities "fall into two categories: participation and opposition." Gibson v. Marjack Co., 718 F. Supp. 2d 649, 653–54 (D. Md. 2010). To decide whether a plaintiff has engaged in a protected activity, courts must first consider "whether the employee 'communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination.'" Bowman v. Baltimore City Bd. of Sch. Commissioners, 173 F. Supp. 3d 242, 248 (D. Md. 2016). If this question is answered in the affirmative, "then a court considers whether this communicated belief concerns a practice that is 'actually unlawful under Title VII' or that the employee 'reasonably believes to be unlawful.'" Id.

Plaintiff's act of taking medical leave is not a protected activity in this case. Her medical leave action was not taken as a means of communicating to her employer that she believed

the employer's action (or inaction) to be unlawful, but was taken for her physical and psychological needs.

However, Plaintiff did engage in a protected activity when she filed the Charge of Discrimination.  Filing a Charge with the EEOC is a clear statement of opposition.  Moreover, at this stage of the litigation, the Court is satisfied of her reasonable belief that a hostile work environment was in progress, even if the evidence does not ultimately rise to that level.  Indeed, the Fourth Circuit has stated that a plaintiff's belief does not need to be supported by additional evidence that such an environment is likely to occur.  See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 284 (4th Cir. 2015) ("an employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress, with no requirement for additional evidence that a plan is in motion to create such an environment or that such an environment is likely to occur.").

The Court finds that she had a reasonable belief that the email incident and subsequent response, although insufficient on its own to state a prima facie claim for hostile work

environment, was nonetheless "physically threatening or humiliating" at the time.[4]  Id.

Moreover, the Court finds that the Plaintiff had engaged in the protected activities of complaining about Ms. Perdue's behavior toward her even before she filed a formal EEOC Charge of Discrimination.  See, e.g., Compl. ¶ 23 (Perry sharing the obscene email with Human Resources); ¶ 24 (Perry requesting Defendant Dashield address the matter with her supervisor and preclude Mr. Perdue from being allowed on the premises); ¶ 26 (Perry complaining to Defendants Waller and Dashield about Ms. Perdue's hostility); ¶ 32 (Perry protesting her demotion to a timekeeper).  Although "individual acts may be scrutinized to ascertain their nature, purpose, and nexus to the alleged objective, the touchstone is whether the plaintiff's course of conduct as a whole" meets the two step inquiry.  DeMasters v. Carilion Clinic, 796 F.3d 409, 418 (4th Cir. 2015) (emphasis in original).  Considering Plaintiff's entire course of conduct following the email, the Court is satisfied that has stated her participation in an activity protected by Title VII.

---

[4] The email could plausibly have been imputable to the employer under a negligence standard.  See E.E.O.C. v. Cromer Food Servs., Inc., 414 F. App'x 602, 606 (4th Cir. 2011).  The Defendants were on notice of the email through Plaintiff's multiple complaints.  Despite this notice, they took absolutely no action when they could have at the least investigated the origin of the email address or blocked the email address.

The Court also finds that a number of adverse employment actions were taken against Plaintiff following her complaints and EEOC charge.  For example, Plaintiff alleged that she was demoted to a "timekeeper" in a different part of the building and that she was told that this demotion would be permanent. Id. ¶¶ 29-30, 33-35.  Ms. Perdue allegedly began to remove responsibilities from Plaintiff, including personally handling responsibilities for which Plaintiff used to handle, not providing Plaintiff with access to files that she believed she needed to effectively complete her work, and changing the way contract review was assigned so that Plaintiff had fewer independent responsibilities.  Compl. ¶¶ 36-39, 41-43. Plaintiff receives two performance reviews with a lower rating, even though she had always received an "Outstanding" performance review prior to this time.  Id. ¶¶ 14, 44.  Plaintiff was then terminated from employment in October 2017.  Id. ¶¶ 57-58.

Finally, the Court finds that the causation element has been sufficiently pled.  Foster, 787 F.3d at 250.  The record supports the plausible claim that actions taken by Defendants were personally directed at Plaintiff because of her numerous complaints about this obscene email.  There is no indication that these actions (e.g., demotion and termination) would have occurred prior to her complaints.

If the Plaintiff makes a prima facie showing of the three retaliation elements, the burden shifts back to the Defendants "to show that [the] purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." <u>Foster</u>, 787 F.3d at 250 (4th Cir. 2015). Defendants have not made such a showing, and indeed, have not addressed any non-retaliatory reason for these subsequent actions. Under the circumstances, the Court finds it appropriate for the parties to proceed to discovery and resolve the retaliation claim after a more fully developed record.

Accordingly, the Court shall deny Defendants' motion to dismiss Count III.

B. <u>Intentional Infliction of Emotional Distress Claim</u>
<u>Against Defendant Allen J. Perdue</u>

To establish a claim of intentional infliction of emotional distress, a Plaintiff must prove (1) conduct that is intentional or reckless, (2) conduct that is extreme and outrageous, (3) a causal connection between the wrongful conduct and the emotional distress, and (4) severe emotional distress. <u>Batson v. Shiflett</u>, 325 Md. 684, 733 (1992). This cause of action "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." <u>Kentucky Fried Chicken Nat.</u>

Mgmt. Co. v. Weathersby, 326 Md. 663, 670 (1992). The conduct

must "exceed[] all bounds usually tolerated by decent society,

of a nature which is especially calculated to cause, and does

cause, mental distress of a very serious kind. The requirements

of the rule are rigorous, and difficult to satisfy." Id.,

quoting W. Page Keeton, Prosser and Keeton on the Law of Torts §

12, p. 60-61 (5th ed. 1984). Notably, "recovery [for

intentional infliction of emotional distress] will be meted out

sparingly, its balm reserved for those wounds that are truly

severe and incapable of healing themselves." Figueiredo-Torres

v. Nickel, 321 Md. 642, 653 (1991) (internal citations omitted).

Plaintiff's pleadings fall short of meeting this standard.

There are only three factual allegations in the Complaint

regarding Defendant Allen Perdue. First, he is alleged to have

sent the October 1, 2015 email, stating:

> are you an exhibitionist? love those short
> skirts and your long legs. when you bent
> over your cheeks looked great. do you go
> commando? my picture says so? need more
> personal contact. you might agree by sending
> me proof and if you shave. I know you don't
> want this circulated.

Compl. ¶¶ 16-17. Second, he had previously met Plaintiff when

he visited his wife at work, and their interaction "was limited

to polite conversation." Id. ¶ 21 n. 2. Third, Plaintiff

alleges that Mr. Perdue had gotten her email address from "group

emails" on which she and Mr. Perdue were both included.  Id.

These allegations do not rise to the level of "extreme and outrageous conduct" for which this Court can provide relief. Batson, 325 Md. at 733.  The Court is mindful of the severity of conduct required to state a claim for intentional infliction of emotional distress, which "is to be used sparingly," Kentucky Fried Chicken Nat. Mgmt., 326 Md. at 670, and its "balm [is to be] reserved for those wounds that are truly severe and incapable of healing themselves." Figueiredo-Torres, 321 Md. at 653.  A single obscene email, plus a single "polite" interaction and allegations of being on an email chain, simply do not state a claim for relief.  See, e.g., Figueiredo-Torres, 321 Md. at 654 (concluding a jury may find extreme and outrageous conduct when a marriage counsel hired by Plaintiff engaged in sexual intercourse with Plaintiff's wife); B.N. v. K.K., 312 Md. 135, 148 (1988) (finding a viable cause of action when defendant engaged in sex with plaintiff even though he knew he had transmittable herpes); Young v. Hartford Acc. & Indem. Co., 303 Md. 182, 198 (1985) (reversing dismissal when workers' compensation insurer insisted plaintiff undergo psychiatric evaluation for the "sole purpose" of harassing her to "abandon[] her claim, or into committing suicide").  The Court is also not persuaded by Plaintiff's argument that this conduct should be

19

considered extreme and outrageous because it was sent by Mr. Perdue to his wife's subordinate employee. Pl.'s Resp. at 7, ECF No. 14.

Accordingly, the Court will grant Defendant Allen J. Perdue's Motion to Dismiss Count V.

IV. <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendants' Motion to Dismiss [ECF No. 10] is GRANTED IN PART and DENIED IN PART.

   a. The retaliation claim (Count III) remains pending against the State of Maryland, the Maryland Department of Health, and the Deer's Head Hospital Center.

   b. All other claims are dismissed against the following Defendants: the State of Maryland, the Maryland Department of Health, the Deer's Head Hospital Center, Mary Beth Waide, Kenneth Waller, Elizabeth Perdue, and Luanne Dashield.

2. Defendant Allen J. Perdue's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 11] is GRANTED.

3. No claims remain pending against Mary Beth Waide, Kenneth Waller, Elizabeth Perdue, Luanne Dashield, and Allen J. Perdue.

4. Plaintiff shall arrange a case planning telephone conference with the remaining parties and the Court to be held by March 28, 2018.


SO ORDERED, this <u>Wednesday, March 7, 2018</u>.


_____/s/_____<br>
Marvin J. Garbis<br>
United States District Judge